DECISION
This matter is before the Court on plaintiff Jeffrey Vigneaux's (hereinafter "Vigneaux" or "plaintiff") complaint seeking specific performance of a document referring to the sale of real estate owned by the defendant, Lorraine T. Carriere (hereinafter "Carriere" or "defendant") located at 375 Central Street, Harrisville, Rhode Island. At trial the parties presented an agreed statement of facts (attached as Exhibit 1), offered testimony from both of the parties and introduced a number of exhibits.
 FACTS
In May, 2000, defendant decided to sell her home of many years located at 375 Central Street in the Village of Harrisville, Town of Burrillville, Rhode Island. To encourage the process, on May 15th she placed a "For Sale by Owner" sign on a tree in front of the house. Two days later on May 17th plaintiff, seeing the sign, approached defendant. After a brief tour, plaintiff expressed a desire to purchase it, whereupon defendant gave a purchase price of $125,000. He then went home to prepare a document to reflect that understanding. Vigneaux returned with a form he drafted setting forth the terms discussed. After adding some additional terms on the back, Vigneaux and Carrier executed it, in duplicate, and Vigneaux gave defendant a check for $100 as a down payment. Plaintiff then began a mortgage application process. While waiting for approval, inspections of the real estate were done at plaintiff's request, both by a real estate appraiser as well as an exterminator. Sometime around June 14th plaintiff met with defendant so they could sign the Real Estate Disclosure Form, which defendant had received. At this time defendant requested that plaintiff sign a Purchase and Sales Agreement prepared by her attorney. This form was never signed. Later that same day, in a telephone conversation, defendant advised plaintiff she was taking the house off the market. Within a matter of days, Carriere had listed the property with a realtor who advertised it for sale at $141,000. Vigneaux recorded the document in question with the Town Recorder of Deeds and instituted this action on his own.
 ARGUMENTS MADE
Plaintiff argues that the disputed document was, in fact, a valid agreement that contained all the necessary elements to be a binding contract, as well as meet all the requirements to satisfy the Statute of Frauds. He points out that after setting out the parameters of their understanding, Vigneaux went home to draft the document. After having time to consider it, defendant added conditions on the back that she wanted, including a right to remain on the premises for up to ninety days and, then, signed it. Further, Carriere allowed real estate and pest inspectors, both needed as part of plaintiff's mortgage application, to view the premises. Additionally, on June 14th, even though plaintiff did not sign the Purchase and Sale Agreement prepared by defendant's attorney, Carriere still signed the Real Estate Disclosure Form that she had received. Finally, plaintiff notes that he received a mortgage commitment within the 30 days set forth in the document and advised defendant of this fact. With regard to the Statute of Frauds, Vigneaux points out that all the necessary elements to satisfy it were contained in the document. The document identified the parties, their intent to sell and buy, a description of the real estate to be conveyed; and it was signed by the parties to be charged.
Carriere, on her part, contends that the document lacked a mutuality of obligation and reflected nothing but an offer by Vigneaux to purchase the real estate with plaintiff having 30 days to get financing. A contract would not be created until a Purchase and Sale Agreement, to be drafted by her attorney, was executed.[1] She points out that the document must be interpreted against the plaintiff since he drafted it. She also notes that the so-called down payment was open-ended since it allowed the plaintiff the right to increase the amount and, further, that the document contained no closing date. Finally, she argues that Vigneaux was not a ready, willing and able purchaser and, as such, lacks the clean hands necessary to be entitled to equitable relief.
 DISCUSSION
This case brings together some of the basic concepts of contract law, as well as the Statute of Frauds. It is defendant's contention that there was no mutuality between the parties in that Carriere saw the document as only an offer to purchase, while Vigneaux treated it as a binding agreement to sell and purchase real estate. While no one can delve into the minds of the participants, their intent can be gleaned from their conduct. Plaintiff, by expressing his unequivocal desire to purchase at the first viewing, by drafting the document, by giving a deposit, and by making application for a mortgage, exhibited a clear intent to buy. For her part, defendant, from May 17th to June 14th did nothing to indicate she did not intend a sale. She put a "For Sale by Owner" sign out; she discussed general terms with the plaintiff; she included terms important to her in the document and then signed it; she allowed the inspectors to view the house; and as late as June 14th, she signed the Real Estate Disclosure Form, even though plaintiff would not sign the Purchase and Sale Agreement prepared by her attorney. Certainly there was a meeting of the minds, not simply to consider an agreement, but actually to sell the real estate. While Carriere may have later concluded that the agreement was not a good one, that should not be a basis for finding there was no mutual agreement to sell on May 17th.
Section 9-1-4 of the Rhode Island General Laws, 1956, as amended, sets forth the Statute of Frauds.
 "No action shall be brought:
 (1) Whereby to charge any person upon any contract for the sale of lands, tenements. . . .
 Unless the promise or agreement upon which the action shall be brought, or some note or memorandum thereof, shall be in writing, and signed by the party to be charged, or by some other person by him or her thereunto lawfully authorized."
The writing necessary to satisfy the Statute has long been the bane of courts interpreting it.
 "The Statute does not require that a contract for the sale of land must be in writing. A memorandum to comply with the Statute of Frauds need contain only the substance of the contract or agreement and not a statement of all particulars. `The note or memorandum sufficient to prevent the operation of the Statute upon a contract for the sale of land need not have the formal precision usually found in a written contract or agreement. Such note or memorandum meets the requirement of the Statute if it sets out who are the sellers and the buyers, their respective intention to sell and to purchase, such a description of the subject matter of the sale as may be applied to a particular piece of land, the purchase price, and terms if payment of the sale is not for cash; and further such note or memorandum must be signed by the party to be charged . . . .'" Zuccolo v. Blazar, 694 A.2d 717 (R.I. 1997).
Here, the document, though not professionally drafted, did contain the necessary elements to satisfy the Statute. It named the parties, described the premises to be sold, set the purchase price and method of payment; and it was signed by defendant, the party to be charged. Defendant's argument that no closing date was included in the document is of no avail. Our courts have held "in the absence of stipulation, it is ordinarily held that a contract for the sale of land is to be performed within a reasonable time. What is a reasonable time depends upon the circumstances of each case." Durepo v. May, 73 R.I. 71 (1947).
The fact that plaintiff had received his mortgage commitment within 30 days meant that a closing could have been conducted by mid to late June, a reasonable time under any circumstances for a real estate closing. Finally, defendant's contention that plaintiff was guilty of unclean hands is without merit. Rather than being the party unable to go forward, all the evidence points to his ready, willing desire to complete the agreement and that the only reason the agreement was not executed was defendant's desire to seek more money for her home.[2]
 FINDINGS OF FACT AND CONCLUSIONS OF LAW
1. The Court finds that mutual intent existed between the parties to sell and purchase the defendant's real estate at 375 Central Street, Burrillville, Rhode Island, on May 17, 2000.
2. Said intent was exhibited by the placing of a for sale sign, signing the document after adding conditions, acceptance of the deposit, application for the mortgage, inspection of the property, and the signing of the Real Estate Disclosure Form.
3. This document was a binding contract between the parties for the sale of this real estate.
4. The document met the requirements to satisfy the Statute of Frauds.
5. The document listed the parties, described the real estate, set the sales price and method of payment, and was signed by the party to be charged.
6. The plaintiff was at all times ready, willing and able to perform his part of the contract and was not guilty of unclean hands.
7. The defendant, by her conduct, breached the contract between the parties.
8. The plaintiff, in his testimony, was more credible than the defendant, especially as to whether there was going to be a Purchase and Sales Agreement prepared by defendant's attorney.
9. The plaintiff has satisfied the Court by a preponderance of the evidence as to his claim for specific performance.
Accordingly, the Court finds for the plaintiff and orders that defendant shall specifically perform the contract entered into by her and the plaintiff on May 17, 2000, by conveying the real estate located at 375 Central Street, Burrillville, Rhode Island, to plaintiff for $125,000 less the $100 deposit.
Counsel shall prepare an order consistent with this decision.
[1] Vigneaux testified that this Purchase and Sale Agreement was never discussed by the parties.
[2] Although briefly mentioned at trial, the Court finds that time was not of the essence in the performance of this contract.